UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NOVA OCULUS PARTNERS, LLC, *et al.*,

    *Plaintiffs*,

v.

U.S. SECURITIES AND EXCHANGE
COMMISSION,

    *Defendant*.

No. 19-cv-666 (DLF)

**MEMORANDUM OPINION**

    Nova Oculus Partners, LLC, Peter Pocklington, Lantson E. Eldred, and AMC Holdings Co., LLC (collectively, Nova Oculus) bring this suit alleging that the Securities and Exchange Commission (SEC) unlawfully withheld various records under the Freedom of Information Act, 5 U.S.C. § 552 *et seq*. (FOIA).  Before the Court is the SEC's Motion for Summary Judgment, Dkt. 12, and Nova Oculus's Cross-Motion for Summary Judgment, Dkt. 14.  For the reasons that follow, the Court will grant the SEC's motion and deny Nova Oculus's cross-motion.

**I.    BACKGROUND**

    Nova Oculus is a medical device company operating in California.  *See* Compl., Dkt. 1, ¶ 4; O'Rourke Decl., Dkt. 14-2, ¶ 3.  When Nova Oculus's predecessor, Acuity Medical, Inc. (Acuity), went bankrupt in 2015, Peter Pocklington and Lantson E. Eldred purchased the company's assets and founded Nova Oculus.  O'Rourke Decl. ¶¶ 5, 7; *see SEC v. Pocklington*, No. 18-cv-701, 2018 WL 6843665 at *2 (C.D. Cal. 2018).  Meanwhile, Acuity's former CEO, Blair Mowery, and its former Chief Marketing Officer, Marshall Masko, formed a competing company called Amerivision International, Inc. (Amerivision).  O'Rourke Decl. ¶¶ 5–6.

Amerivision has since engaged in years of litigation with Nova Oculus and the two companies remain competitors to date.  *Id.* ¶ 8.

On April 5, 2018, the SEC initiated an enforcement action against Nova Oculus in the United States District Court for the Central District of California.  James Decl., Dkt. 14-1, ¶ 2; *id.* Ex. C.  The SEC alleged, among other things, that Nova Oculus and its founders had raised millions of dollars "while concealing the true identity of [the company's] controlling leader, misappropriating investor funds, and funneling undisclosed and excessive commissions to sales agents."  *Pocklington*, 2018 WL 6843665 at *2.  Publicly disclosed documents connected with the enforcement action subsequently revealed communications between Mowery and Masko and Kathryn Wanner, the SEC's lead counsel in the matter.  James Decl. ¶ 3; *id.* Ex. B.

On April 30, 2018, Nova Oculus submitted a FOIA request to the SEC.  *See* Compl. Ex. 1, Dkt. 1-5.  The plaintiffs' initial FOIA request sought "correspondence pertaining to investigative records relating to Nova Oculus Partners, LLC," Compl. Ex. 4, Dkt. 1-8, and a search of the SEC's email server for the following criteria:

> 1. January 1, 2013 through the present, for the e-mail address of Marshallmasko@amerivision.us.
>
> 2. January 1, 2013 through the present, for the e-mail address of Marshall.ameritech@gmail.com.
>
> 3. January 1, 2013 through the present, for the e-mail address for blairmowery@amerivision.us.
>
> 4. January 1, 2013 through the present, for the e-mail address for blair.ameritech@gmail.com.
>
> 5. June 2011 through June 2012, "David and Casselman"
>
> 6. January 1, 2008 through the present, "Wasserman, Comden, Casselman & Esensten"
>
> 7. January 1, 2013 through the present, "Amerivision and International"

Cozza Decl., Dkt. 13-2, ¶ 4.

This search turned up thousands of responsive documents. *Id.* ¶¶ 8–9. On October 10, 2018, the SEC notified Nova Oculus that they were withholding all documents produced by the search pursuant to FOIA Exemption 7(A), *see* Compl. Ex. 15, Dkt. 1-19, which protects records compiled for law enforcement purposes where disclosure "could reasonably be expected to interfere with enforcement proceedings," 5 U.S.C. 552(b)(7)(A). The plaintiffs appealed this withholding to the SEC, *see* Compl. Ex. 16, Dkt. 1-20, and the SEC's Office of General Counsel upheld the decision, *see* Compl. Ex. 17, Dkt. 1-21.

On March 8, 2019, the plaintiffs filed their complaint in the instant action challenging the SEC's decision. *See* Compl. The next month, while this litigation was still pending, "the SEC determined it was no longer necessary to withhold the requested documents under Exemption 7(A)." Cozza Decl. ¶ 7. The SEC's Office of General Counsel then worked with the plaintiffs' counsel to further narrow the search criteria since the initial search produced many documents unrelated to the Nova Oculus investigation. *Id.* ¶ 10. The parties agreed to narrow the search to the following search terms:

1. marshallmasko@amerivision.us;
2. marshall.ameritech@gmail.com;
3. blairmowery@amerivision.us;
4. blair.ameritech@gmail.com;
5. "Wasserman, Comden, Casselman & Esensten" and ("Nova Oculus" or "Eye Machine" or Pocklington or Eldred or "AMC Holdings");
6. Amerivision and ("Nova Oculus" or "Eye Machine" or Pocklington or Eldred or "AMC Holdings"); and
7. Casselman and ("Nova Oculus" or "Eye Machine" or Pocklington or Eldred or "AMC Holdings").

*Id.*

After receiving Nova Oculus's consent to remove any documents that did not pertain to the SEC's investigation of Nova Oculus, the SEC produced 3,883 pages of documents in

3

response to Nova Oculus's amended search, many of them redacted in full or in part. *Id.* ¶¶ 11–12. The SEC withheld various documents under FOIA Exemption 5, which protects "documents that would normally be privileged in the civil discovery context." *Lewis v. U.S. Dep't of the Treasury*, No. 17-cv-943, 2020 WL 1667656 at *6 (D.D.C. 2020). Under the attorney work-product privilege, the SEC withheld: (1) "[e]mails, or portions of emails, about drafting and filing a complaint in the Nova Oculus enforcement case, along with many versions of a draft complaint"; (2) "[e]mails about litigation in SEC enforcement cases other than Nova Oculus"; and (3) "[e]mails about steps being taken in the Nova Oculus investigation." Cozza Decl. ¶ 16. Under the attorney-client privilege, the SEC withheld part of one "email from the Office of FOIA Services to an [Office of General Counsel] attorney . . . seeking legal advice." Def.'s *Vaughn* Index, Dkt. 13-3, No. 29; Cozza Decl. ¶ 26. Under the deliberative process privilege, the SEC withheld: (1) "[e]mails, or portions of emails, about drafting and filing a complaint in the Nova Oculus enforcement case, along with many versions of a draft complaint"; (2) "[e]mails about litigation in SEC enforcement cases other than Nova Oculus"; (3) "[e]mails about steps being taken in the Nova Oculus investigation"; and (4) "[e]mails about the processing of and proposed responses to the Plaintiffs' FOIA request." Cozza Decl. ¶ 20.

The SEC partially withheld various documents under FOIA Exemption 7(C), which "protects information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy," *Elec. Frontier Found. v. DOJ*, 384 F. Supp. 3d 1, 15 (D.D.C. 2019) (internal quotation marks omitted), and FOIA Exemption 6, which "protects personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," *id.* (internal quotation marks omitted). Citing both exemptions, the SEC withheld portions of responsive documents containing:

(1) "[i]dentifying information relating to persons, other than defendants in the SEC's enforcement action, who were being investigated or providing information in connection with the investigation"; (2) "[i]dentifying information relating to SEC employees and staff who worked on matters relating to an SEC investigation or litigation, except to the extent the information was provided on filings in the SEC's enforcement action"; (3) "[i]dentifying information regarding a staff member in a foreign securities agency"; and (4) "[t]he email address of a defendant." Cozza Decl. ¶ 28. Citing Exemption 6 alone, the SEC additionally withheld: (1) "[i]dentifying information for SEC staff involved in processing Plaintiffs' FOIA request"; and (2) "[i]nformation regarding an employee's unavailability." *Id.* ¶ 31.

In addition to the above partially-withheld documents, the SEC also withheld 672 pages of documents in full pursuant to Exemptions 6 and 7(C) where "the documents referred to individuals named in the FOIA request, and withholding the documents in full was the only way to protect information about individuals' potential involvement in a law enforcement investigation." *Id.* ¶ 35. SEC staff reviewed these 672 pages of documents and determined that there was no way to segregate non-exempt information without revealing the nature of the individuals' involvement in the SEC's enforcement matter. *Id.* ¶ 40.

On September 13, 2019, the SEC filed its Motion for Summary Judgment. Dkt. 12. On October 4, 2019, Nova Oculus filed its Cross-Motion for Summary Judgment. Dkt 14. Both motions are now ripe for decision.

## II. LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a

federal agency moves for summary judgment in a FOIA case, the court views all facts and inferences in the light most favorable to the requester, and the agency bears the burden of showing that it complied with FOIA. *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

To prevail under Rule 56, a federal agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam) (internal quotation marks omitted). The agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents," *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (internal quotation marks omitted), and must also explain why any of the nine enumerated exemptions listed in 5 U.S.C. § 552(b) apply to withheld information, *Judicial Watch, Inc. v. Food & Drug Admin*, 449 F.3d 141, 147 (D.C. Cir. 2006); *see also Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015) (agency bears burden of justifying application of exemptions, "which are exclusive and must be narrowly construed").

"The peculiarities inherent in FOIA litigation, with the responding agencies often in sole possession of requested records and with information searches conducted only by agency personnel, have led federal courts to rely on government affidavits to determine whether the statutory obligations of the FOIA have been met." *Perry*, 684 F.2d at 126. Agency affidavits are entitled to a presumption of good faith, *see SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and a court may grant summary judgment based on an affidavit if it contains reasonably specific detail and neither contradictory record evidence nor evidence of bad faith calls it into question, *see Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir.

2013). The "vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

**III.   ANALYSIS**

Nova Oculus does not challenge the adequacy of the SEC's search. The parties dispute only whether the SEC properly withheld and redacted records pursuant to FOIA Exemptions 5, 6, and 7(C). As explained below, the SEC properly invoked these Exemptions to withhold and redact records responsive to Nova Oculus's FOIA request.

**A.   Exemptions 6 and 7(C)**

"FOIA Exemptions 6 and 7(C) seek to protect the privacy of individuals identified in certain agency records." *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011). Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), and Exemption 7(C) protects "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy," *id.* § 552(b)(7)(C). When an agency invokes both exemptions, courts "focus" on Exemption 7(C) because it "establishes a lower bar for withholding material." *Citizens for Responsibility & Ethics in Washington v. DOJ*, 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014) (*CREW I*) (internal quotation marks omitted). The SEC withheld the following records under both Exemption 6 and Exemption 7(C): (1) identifying information relating to persons, other than defendants in the SEC's enforcement action, who were being investigated or providing information in connection with the investigation; (2) identifying information relating to SEC employees and staff who worked on matters relating to an SEC investigation or litigation, except to the extent that the information

was provided in public filings; (3) identifying information regarding an employee of a foreign securities agency; and (4) a defendant's email address.  Cozza Decl. ¶ 28.

Under Exemption 7(C), courts balance the privacy interests implicated by the records being sought against the public's interest in their disclosure.  *Citizens for Responsibility & Ethics in Washington v. DOJ*, 854 F.3d 675, 681 (D.C. Cir. 2017) (*CREW II*).  The government "must account for the privacy interests at stake, recognizing that previous disclosures or admissions may have diminished those interests." *Id.* at 683.  But if the withheld information implicates a substantial privacy interest, the FOIA requester "bears the burden of showing (1) that 'the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) that the information [it] seeks 'is likely to advance that interest.'"  *Roth v. DOJ*, 642 F.3d 1161, 1175 (D.C. Cir. 2011) (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)).  It is well established that "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (internal quotation marks omitted).

The individuals involved in the SEC's investigation of Nova Oculus have substantial privacy interests in the documents withheld under Exemption 7(C).  *See, e.g.*, *Amuso v. Dep't of Justice*, 600 F. Supp. 2d 78, 97 (D.D.C. 2009) ("individuals involved in law enforcement investigations" have a "substantial interest" in "the nondisclosure of their identities and connection to a particular investigation").  Names of private individuals in law enforcement files are ordinarily exempt from disclosure absent "compelling evidence that the agency is engaged in illegal activity." *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991).  But individuals who have already been "implicated in connection with [an] investigation . . . have a diminished

privacy interest" in the information contained in investigative documents.  *CREW II*, 854 F.3d at 682.

Nova Oculus argues that Mowery and Masko have only minimal privacy interests against disclosure of the records at issue because their names have already been publicly linked to the SEC's investigation of Nova Oculus.  *See* James Decl., Exs. A, B.  But the fact that the individuals' identities have been disclosed does not destroy their privacy interests in the *nature* of their involvement in the SEC enforcement matter, as opposed to the mere *fact* of that involvement.  *See CREW I*, 746 F.3d at 1091 (recognizing a "second, distinct privacy interest in the *contents* of the investigative files" (emphasis in original)).  In other words, the fact that the individuals' identities have been publicly connected with a law enforcement matter does not "waive all [] interest in keeping the contents of the [investigative] file[s] confidential" because those individuals still have a "privacy interest . . . in avoiding disclosure of the details of the investigation."  *Kimberlin v. DOJ*, 139 F.3d 944, 949 (D.C. Cir. 1998).  Courts must therefore consider whether, for example, "a responsive document could reveal new information about a person's conduct, going beyond the facts in the public record" regarding that person's involvement with law enforcement.  *CREW II*, 854 F.3d at 682.  If disclosure of the records sought could in fact reveal additional, not-yet-public information, the relevant privacy interests are more likely to outweigh the public interest.  *Id.*  And that is precisely the case here.  While Mowery and Masko no longer have any privacy interest in the fact of their involvement in the SEC enforcement matter against Nova Oculus, the identifying emails that have already been publicly disclosed do not reveal anything about the *nature* of their involvement in the matter.  *See* James Decl., Exs. A, B.  Therefore, they maintain substantial privacy interests in the contents of the investigative files on *that* basis.  *See Kimberlin*, 139 F.3d at 949.

Moreover, Nova Oculus fails to articulate a compelling public interest in favor of disclosure of the withheld documents. Nova Oculus alleges government impropriety in the form of "an apparent illegal *quid pro quo*" based on an email sent from Mowery to Kathryn Wanner, the SEC's lead investigator in the Nova Oculus matter. But where "the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure." *Favish*, 541 U.S. at 174. In this case, Nova Oculus's allegation of a quid pro quo is based entirely on Mowery's courtesy email to Wanner. *See* James Decl., Ex. A ("Thank you so much for your phone call. I sent a lot of information . . . and am attaching some of the same. . . . Thanks for your help."). This email does not "establish more than a bare suspicion" of impropriety, *Favish*, 541 U.S. at 174, and it in no way suggests that the SEC accepted an improper benefit or otherwise acted improperly in pursuing an enforcement action against Nova Oculus. Even if Mowery himself acted in self-interest by offering information to the government about a competitor, nothing in the record supports the inference that the SEC did anything other than enforce the law. In short, Nova Oculus's unsupported allegation of a putative quid pro quo is not a public interest that outweighs the privacy interests of Mowery and Masko.

The SEC's decision to withhold documents under Exemption 6 is also supported by the record. The SEC relied on Exemption 6 to withhold identifying information for SEC staff involved in processing Nova Oculus's FOIA request, as well as information regarding one employee's unavailability. Cozza Decl. ¶ 31. As the SEC explained, SEC employees "have a privacy interest in their identifying information and information about their personal lives so that it is not available to individuals who might be dissatisfied with the employees' work and thus could seek to contact and/or criticize them." *Id.* ¶ 33. No public interest is served by disclosure

of the "names, email and/or mailing addresses, titles, phone numbers, and other personal information" of the employees working on the plaintiffs' FOIA request. *Id.* ¶ 32. The public does not learn anything about "what [its] government is up to" by gaining access to "information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *DOJ v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 773 (1989) (internal quotation marks omitted). Therefore, the SEC properly invoked Exemption 6 to protect the privacy interests of the staff who processed Nova Oculus's request.

Finally, the SEC has satisfied its segregability obligations. FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). An agency may satisfy its segregability obligations by "(1) providing a *Vaughn* index that adequately describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material." *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 207 (D.D.C. 2013). The segregability requirement does not apply to non-exempt material that is "inextricably intertwined" with exempt material, *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977), and agencies are entitled to a presumption that they disclosed all reasonably segregable material, *Sussman*, 494 F.3d at 1117. The SEC submitted a *Vaughn* index outlining which documents were withheld under which exemptions, as well as the basis for withholding each. *See* Def.'s *Vaughn* Index. The SEC also submitted the declaration of Carin Cozza, a senior attorney in the SEC's Office of General Counsel, Cozza Decl. ¶ 1, representing that SEC staff reviewed all responsive documents and "disclosed all portions of the documents that it reasonably foresees could be disclosed without

causing harm," *id.* ¶¶ 12, 27. Together, these documents satisfied the SEC's segregability obligations. *See Nat'l Sec. Counselors*, 960 F. Supp. 2d at 207.

In the declaration, Cozza explained that 672 pages of documents were withheld in full under Exemptions 6 and 7(C) because "withholding the documents in full was the only way to protect information about individuals' potential involvement in a law enforcement investigation." *Id.* ¶ 35. Cozza further explained that the documents withheld in full "refer to individuals [Mowery and Masko] whose email addresses were provided as search terms" in the plaintiffs' FOIA request. *Id.* ¶ 37. Because of that fact, redacting information that could personally identify Mowery and Masko "would not protect the individuals because the nature of the FOIA request and the nature of the documents would make it clear that the redacted names were the names of the individuals listed in the FOIA request." *Id.* ¶ 37. In other words, "[i]f Plaintiffs had even portions of the documents they would know the connection between those individuals and the SEC's investigation." *Id.* These representations in the SEC's declaration adequately explain the SEC's basis for withholding the documents in question in full. Only by withholding the documents in full could the SEC protect Mowery and Masko's "privacy interest . . . in avoiding disclosure of the details of [their involvement in] the [SEC's] investigation." *Kimberlin*, 139 F.3d at 949. Accordingly, the SEC complied with its obligation to disclose all reasonably segregable material, notwithstanding its withholding of these documents in full. *See Sussman*, 494 F.3d at 1117.

    **B.**     **Exemption 5**

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption "incorporates the traditional privileges that the

Government could assert in civil litigation against a private litigant," including the attorney work-product, attorney-client, and deliberative process privileges. *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (internal quotation marks omitted).

The attorney work-product privilege incorporated into FOIA Exemption 5 "extends to documents and tangible things that are prepared in anticipation of litigation or for trial by an attorney." *Ellis v. DOJ*, 110 F. Supp. 3d 99, 108 (D.D.C. 2015) (internal quotation marks omitted), *aff'd*, 2016 WL 3544816 (D.C. Cir. June 13, 2016). Courts apply a "because of test, asking whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Nat'l Ass'n of Criminal Def. Lawyers v. Exec. Office for U.S. Attorneys*, 844 F.3d 246, 251 (D.C. Cir. 2016) (internal quotation marks omitted). The SEC withheld three categories of documents under FOIA Exemption 5 and the attorney work-product privilege: (1) emails or portions of emails about drafting and filing a complaint in the Nova Oculus enforcement case; (2) emails about steps being taken in the Nova Oculus investigation; and (3) emails about litigation in other SEC enforcement cases. Cozza Decl. ¶ 16. The SEC properly withheld these documents under FOIA Exemption 5 and the attorney work-product privilege because all the documents were prepared by or under the direction of attorneys in anticipation of litigation. *Id.* ¶¶ 17–19. The plaintiffs do not challenge the SEC's withholdings under this privilege. *See* Pl.'s Cross-Mot. at 15–16.

The attorney-client privilege incorporated into FOIA Exemption 5 "protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services." *Touarsi v. DOJ*, 78 F. Supp. 3d 332, 345 (D.D.C. 2015) (citing *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984)). In a governmental setting, the "client" may be the agency and

its "attorney" the agency lawyer. *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997). The SEC invoked the attorney-client privilege to withhold part of an email from the SEC's FOIA Office seeking legal counsel from the SEC's Office of General Counsel. Because this email sought legal advice for the agency from an agency lawyer, the SEC properly withheld it under Exemption 5 and the attorney-client privilege. *See* Cozza Decl. ¶ 26. The plaintiffs also do not challenge the SEC's withholding under this privilege. *See* Pl.'s Cross Mot. at 15–16.

The deliberative process privilege incorporated into FOIA Exemption 5 allows agencies to withhold "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (internal quotation and citation omitted). To invoke the deliberative process privilege, an agency must show that the information withheld is both "predecisional" and "deliberative." *Id.* at 1434. A document is "predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'" *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 151 (D.C. Cir. 2006) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

The SEC invoked the deliberative process privilege to withhold four categories of documents: (1) emails or portions of emails about drafting and filing the complaint in the Nova Oculus enforcement case; (2) emails about other steps being taken in the Nova Oculus investigation; (3) emails about litigation in other SEC enforcement actions; and (4) emails related to the processing of Nova Oculus's FOIA request. Cozza Decl. ¶ 20. The agency's declaration makes clear that all the materials withheld were both predecisional and deliberative. *Id.* ¶ 21 (documents "reflect analyses of what to include in the final complaint and other related

documents"); ¶ 23 (documents "reflect deliberations about future actions in those cases"); ¶ 24 (documents "reflect deliberations about what to include in a response to a FOIA request").  The agency has also attested that it reviewed all documents withheld under this privilege and "segregated and provided any portions that are not deliberative."  *Id.* ¶ 25.  The SEC has therefore fully justified its withholdings under the deliberative process privilege.

Nova Oculus argues that the deliberative process privilege does not apply under the circumstances of this case because of the government misconduct exception.  *See In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997) ("[W]here there is reason to believe the documents sought may shed light on government misconduct, the [deliberative process] privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." (internal quotation marks omitted)).  It is an open question whether the deliberative process privilege is subject to a government misconduct exception in the FOIA context.  *Compare Wright v. Admin. for Children and Families*, No. 15-cv-218, 2016 WL 5922293 at *11 (D.D.C. 2016) ("Exemption 5's protection of privileged materials is not subject to the same [government misconduct] exception[] to which the common law privilege is susceptible."), *with Judicial Watch of Fla., Inc. v. U.S. DOJ*, 102 F. Supp. 2d 6, 15 (D.D.C. 2000) ("It is true that where there is reason to believe the documents sought may shed light on government misconduct, the deliberative process privilege is routinely denied." (alterations adopted and internal quotation marks omitted)).  But the Court need not answer that question here.  Assuming the government misconduct exception does apply in the FOIA context, the exception does not apply in this case for largely the same reasons discussed above: namely, the plaintiffs have offered no "reason to believe the documents sought may shed light on government misconduct."  *See In re Sealed*

15

*Case*, 121 F.3d at 738.  As noted, the plaintiffs offer only their own speculation about a secret quid pro quo, based on nothing more than a few words of common courtesy in an email exchange.  Therefore, even if the government misconduct exception does apply here, there is no evidence of government misconduct.  The SEC properly withheld the documents at issue under Exemption 5 and the deliberative process privilege.

## CONCLUSION

For the foregoing reasons, the Court grants the SEC's motion for summary judgment and denies Nova Oculus's cross-motion for summary judgment.  A separate order accompanies this memorandum opinion.

August 28, 2020

_____
DABNEY L. FRIEDRICH
United States District Judge